IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| KEMPER AIP METALS, LLC; WAELZHOLZ BRASMETAL LAMINAÇÃO LTDA,<br><br>　　　　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　　　Defendant. | Court No.  26-00764 |

# COMPLAINT

　　Plaintiffs Kemper AIP Metals, LLC, ("Kemper") and Waelzholz Brasmetal Laminação Ltda ("Brasmetal") (collectively, "Kemper & Brasmetal"), by and through their counsel, bring this action against the United States.  Plaintiffs allege and state as follows:

## Introduction

1.　　Kemper is headquartered in Ponte Vedra Beach, Florida, and specializes in the distribution of various non-ferrous metal products including copper, copper-based alloys, aluminum, coated steel, and lead.  Kemper serves wide range of industries, from U.S. ammunition and aerospace to power distribution, oil and gas exploration, medical devices, and heat exchanger markets.  Kemper imports brass-coated steel strip for the ammunition market. Brass coating serves an aesthetic purpose.

## Factual Background

2.　　Steel Dynamics, Inc. (SDI), Nucor Corporation (Nucor), United States Steel Corporation (U.S. Steel), Wheeling-Nippon Steel, Inc. (Wheeling-Nippon), and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (the "USW") (collectively, "Petitioners") filed antidumping ("AD") and

countervailing duty ("CVD") petitions concerning imports of certain corrosion-resistant steel products from Brazil on September 5, 2024.  *See* Petitioners' Letter to Sec'y of the U.S. International Trade Commission, *Petitions for the Imposition of Antidumping and Countervailing Duties:  Corrosion-Resistant Steel Products from Australia, Brazil, Canada, Mexico, the Netherlands, South Africa, Taiwan, Turkey, the United Arab Emirates, and the Socialist Republic of Vietnam* (Sept. 5, 2024); *Petition for the Imposition of Antidumping and Countervailing Duties Pursuant to Sections 701 and 731 of the Tariff Act of 1930, as amended, Vol I Common Issues and Injury* (Sept. 5, 2024) ("Petition").

3. Petitioners are major U.S. steel producers that manufacture, inter alia, flat-rolled steel products and apply corrosion-resistant metallic coatings, predominantly hot-dip galvanized coatings, for use in automotive and other industrial applications.  USW claims to represent workers at facilities producing corrosion-resistant steel and workers employed in the metals, mining, pulp and paper, rubber, chemical, glass, auto supply, and energy-producing industries, as well as in other industries such as healthcare and higher education.

4. Effective September 5, 2025, the U.S. International Trade Commission ("Commission") instituted Investigations Nos. 701-TA-733-736 and 731-TA-1702-1711 pursuant to sections 703(a) and 733(a) of the Tariff Act of 1930 (19 U.S.C. §§ 1671b(a), 1673b(a)) to determine whether certain imports of corrosion-resistant steel products materially injured or threatened material injury to a domestic industry.  *See Corrosion-Resistant Steel Products from Australia, Brazil, Canada, Mexico, Netherlands, South Africa, Taiwan, Turkey, United Arab Emirates, and Vietnam; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations*, 89 Fed. Reg. 73,721, 73,723 (Int'l Trade Comm'n Sep. 11, 2024).

5.Kemper & Brasmetal participated in the final hearing and submitted a post-conference brief, comments on questionnaires, questionnaire responses, a pre-hearing brief, and a post-hearing brief.  *See*, *e.g.*, Kemper & Brasmetal, *Prehearing Brief* (Aug. 5, 2025).

6.Kemper & Brasmetal submitted to the Commission that brass-coated products constitute a separate domestic like product and, consequently, a separate domestic industry; that Petitioners do not represent that industry and lacked standing; that Petitioners, by definition, cannot be injured by reason of such imports; and that, in any event, that industry is not being injured by reason of imports of brass-coated products.

7.Kemper & Brasmetal further submitted that, unlike the listed coating metals and alloys, brass coating does not provide corrosion resistance because brass is more noble and less reactive to oxidation than steel.  This means that brass coating does not prevent the oxidation of the underlying iron.  Brass coating is used for aesthetic purposes in the ammunition industry to enhance the appearance of the heads of shotgun shell cartridges.  *See*, *e.g.*, Hearing Tr. at 284-285, Inv. Nos. 701-TA-733 & 731-TA-1702 (Final) (USITC Aug. 12, 2025).

8.In addition to the significant distinctions in physical characteristics and uses, Kemper & Brasmetal submitted that most other like-product criteria demonstrate that brass-coated products are separate.  Specifically, there are lack of interchangeability; differences in channels of distribution; significant price differences; and different perceptions among producer and customer groups, though there is some overlap in manufacturing facilities.

9.No producer of brass-coated products participated in the underlying investigations.  At the final hearing, the Commission met silence when it asked Petitioners whether brass coating confers corrosion resistance, until one of Petitioners' counsel spoke to fill the silence.  *See* Hearing Tr. at 122, Inv. Nos. 701-TA-733 & 731-TA-1702 (Final) (USITC Aug. 12, 2025).

10. None of the mandatory respondents in the concurrent AD and CVD investigations for Brazil, the only country with subject imports of brass-coated products, reported producing or selling brass-coated products.

11. On November 28, 2025, the Commission issued a final affirmative determination, finding that the domestic industry was materially injured by reason of subject imports. The Commission determined that there is single domestic like product encompassing brass-coated steel. *See Corrosion-Resistant Steel Products from Australia, Brazil, Canada, Mexico, Netherlands, South Africa, Taiwan, Turkey, United Arab Emirates, and Vietnam*, Inv. Nos. 701-TA-733-736 and 731-TA-1702-1711, USITC Pub. 5678 (Int'l Trade Comm'n Nov. 2025) (final) ("*Final Injury Determination*").

12. The Commission did not consider and reach a conclusion concerning all the 'like-product factors' for brass-coated products because it was facing a continuum of products covered by the scope language as interpreted by the U.S. Department of Commerce ("Commerce") at the time, an interpretation that is itself subject to litigation before the Court. *See Final Injury Determination* at 15; *see also Kemper AIP Metals, et al. v. United States*, Court No. 26-00762 (Ct. Int'l Trade, filed January 20, 2026).

13. The Commission ignored substantial evidence demonstrating that brass coating differs from every other coating metal and alloy listed in the scope language; renders the product entirely non-interchangeable; is used in a completely different industry and for aesthetic purposes rather than for corrosion resistance; and commands a completely different market price for brass-coated steel compared to corrosion-resistant steel. Brass coating is used for aesthetic purposes in the ammunition industry to enhance the appearance of the heads of shotgun shell cartridges.

14. Instead, the Commission relied on self-researched material that conflated the corrosion resistance of solid brass articles with brass coating on flat steel, rather than engaging with the scope language and scientific sources showing that corrosion resistance is determined in relation to the underlying metal. *See Final Injury Determination* at 24-25, n.141, and 29, n.181. Zinc, for example, is listed as a corrosion-resistant metal in the scope but is in fact highly reactive to oxidation and is not corrosion resistant in its own right. It is described as corrosion-resistant because it is less noble than steel, unlike brass, and provides cathodic or sacrificial protection.

15. The Commission did not reach a conclusion concerning the interchangeability of brass-coated products specifically and instead lumped that issue together with the fact that other metal coatings may have some overlap in uses. It similarly did not reach a conclusion specific to brass coating regarding customer and producer perceptions and gave no weight to its own finding that pricing data "indicates that brass-coated {products are} priced substantially higher than the average price of all other {corrosion-resistant steel}." *See Final Injury Determination* at 26-27.

### Administrative Decision to be Reviewed

16. Plaintiffs contest certain findings and conclusions of law made by the U.S. International Trade Commission in its final determination of material injury in *Corrosion-Resistant Steel Products from Australia, Brazil, Canada, Mexico, Netherlands, South Africa, Taiwan, Turkey, United Arab Emirates, and Vietnam; Determinations*, 90 Fed. Reg. 55,320 (Int'l Trade Comm'n Dec. 2, 2025), and the views of the Commission contained in USITC Publication 5678 (November 2025), entitled *Corrosion- Resistant Steel Products from Australia, Brazil, Canada, Mexico, Netherlands, South Africa, Taiwan, Turkey, United Arab Emirates, and Vietnam: Investigation Nos.* 701–TA–733–736 and 731–TA–1702–1711 (Final), as part of the antidumping and countervailing duty orders published on December 19, 2025. *See Amended Final*

*Antidumping Duty Determination: Corrosion- Resistant Steel Products from Australia, Brazil, Canada, Mexico, the Netherlands, South Africa, Taiwan, the Republic* of *Turkey, the United Arab Emirates, and the Socialist Republic of Vietnam: Antidumping Duty Orders,* 90 Fed. Reg. 59,494 (Dep't of Commerce Dec. 19, 2025); *Certain Corrosion-Resistant Steel Products from Brazil, Canada, Mexico, and the Socialist Republic of Vietnam: Countervailing Duty Orders,* 90 Fed. Reg. 59,488 (Dep't of Commerce Dec. 19, 2025) (together, the "*Orders*").

### Jurisdiction

17. Plaintiffs brought this action under commenced under 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II) and (B)(i), therefore, this Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

### Standing

18. Kemper is a U.S. importer, and Brasmetal is a producer and exporter of brass-coated steel products from Brazil that were deemed to be corrosion-resistant steel and thus are interested parties as defined by 19 U.S.C. § 1677(9)(A). Plaintiffs were also participants in the underlying agency investigation that is now on appeal. Plaintiffs entered an appearance; filed post-conference, pre-hearing, and post-hearing briefs; submitted comments on questionnaires and questionnaire responses; and participated in a hearing. Plaintiffs therefore have standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

### Timeliness

19. Under 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II) and (B)(i), an action must be commenced "{w}ithin thirty days after – the date of publication in the Federal Register" of an AD/CVD order based upon final affirmative determination by the Commission under sections 1671d and 1673d. Under 19 U.S.C. §1516a(a)(2)(A), an interested party "may commence an action in the

United States Court of International Trade by filing a summons, and within thirty days thereafter a complaint."

20.     This Complaint is timely because it was filed within thirty days of the Summons filed on January 20, 2026.  ECF No. 1.  Plaintiffs timely filed the Summons within thirty days of the *Orders* published on December 19, 2025, because the thirtieth day fell on a Sunday followed by the federal holiday of Martin Luther King's Day on January 19, 2026, in accordance with Rules 3(a)(2) and 6(a)(1)(C) of the Rules of this Court.

## Statement of Claims

### Count One

21.     Paragraphs 1 to 20 are incorporated herein by reference.

22.     The Commission failed to consider all the 'like-product criteria' for brass-coated products in contrast to all corrosion-resistant products covered by the scope language. Specifically, the Commission reached no conclusions on interchangeability or on producer and customer perceptions and gave no weight to the substantial price differences. These failures, and the Commission's resulting determination that brass-coated products are not a separate like product, are therefore unlawful and unsupported by substantial evidence.

### Count Two

23.     Paragraphs 1 to 22 are incorporated herein by reference.

24.     The Commission determined that record evidence indicates that brass coating offers corrosion resistance.  The cited articles, however, do not address brass coating.  They discuss solid brass as an alloy in its own right.  They therefore establish no nexus between the corrosion resistance of the metal itself and any corrosion-resistant properties of a coating.  Zinc, for example, is not corrosion-resistant in its own right but is the predominant metal used to coat

flat-rolled steel to provide corrosion resistance. The Commission's own cited evidence acknowledges that metal coatings applied through electroplating may used for decorative purposes. The Commission's reliance on those sources, while ignoring ample scientific material on the record addressing corrosion resistance in the context of metal coatings, is therefore unlawful and unsupported by substantial evidence, as is the Commission's resulting conclusion that brass-coated products are not a separate like product for purposes of the injury determination.

### Count Three

25. Paragraphs 1 to 24 are incorporated herein by reference.

26. The Commission determined that brass-coated steel is not a separate domestic like product and conducted its injury analysis for a single industry encompassing corrosion-resistant steel producers to reach its affirmative determination. Because that domestic-like-product determination is unlawful and unsupported by substantial evidence, the Commission's consequent affirmative injury determination with respect to brass-coated products is likewise unlawful and unsupported by substantial evidence.

### Count Four

27. Paragraphs 1 to 25 are incorporated herein by reference.

28. Commerce did not calculate any dumping margins on sales of brass-coated products. Brass-coated products are not mere variations within specific product categories. They represent sales that compete with a separate domestic industry. The Commission therefore had no basis to determine that subject brass-coated imports injure the domestic industry, and its injury determination is therefore unlawful and unsupported by substantial evidence.

### Count Five

29. Paragraphs 1 to 28 are incorporated herein by reference.

30. The Commission has made no separate final injury determination concerning the brass-coated industry. Petitioners have made no separate allegations concerning that industry, nor are they part of that industry. Petitioners therefore lack standing to ask the Commission to make an injury determination concerning a U.S. industry that did not participate in the investigations.

31. The Petitioners have no standing, and any claimed injury to the brass-coated industry would not be legally cognizable. The Commission has no authority to make an injury determination concerning the brass-coated industry absent allegations by, and participation from, that industry. The Commission's affirmative determination as applied to imports of brass-coated products and to that industry is therefore unlawful and unsupported by substantial evidence.

### **Prayer for Relief**

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Enter judgment in favor of Plaintiffs;
2. Hold that the Commissions' determination that brass-coated products and corrosion-resistant product constitute a single domestic like product is unlawful and unsupported by substantial evidence;
3. Hold that the Commission's final injury determination as applied to imports of brass-coated product imports is unlawful and unsupported by substantial evidence;
4. Issue a declaratory judgment under 28 U.S.C. § 2643(c)(1) that Petitioners lack standing to claim injury on behalf of industry in which they do not participate and that any such claims of injury are not legally cognizable; and

5. Remand the final injury determination to the Commission with instructions to issue a new determination consistent with the Court's opinion; and

6. Grant such other relief as the Court may deem just and proper.

Date: February 19, 2026

John Anwesen
LIGHTHILL PC
300 New Jersey Ave. NW, Ste 300
Washington DC, 20001
(771) – 212 – 7982
J.Anwesen@lighthill.law