**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HON. M. MILLER BAKER, JUDGE**

KEMPER AIP METALS, LLC;
WAELZHOLZ BRASMETAL
LAMINAÇÃO LTDA,

               Plaintiffs,

        v.

UNITED STATES OF AMERICA,

               Defendant.

Court No.  26-00764

**OPPOSITION TO MOTIONS TO INTERVENE**

Plaintiffs Kemper AIP Metals, LLC, ("Kemper") and Waelzholz

Brasmetal Laminação Ltda ("Brasmetal") (collectively, "Kemper &

Brasmetal"), by and through their counsel, oppose the Partial Consent

Motion to Intervene ("Motion") filed by United States Steel Corporation

("U.S. Steel") on March 11, 2026, Nucor Corporation ("Nucor") on March

19, 2026, Cleveland-Cliffs Inc. ("Cleveland-Cliffs") on March 19, 2026,

and Steel Dynamics, Inc. ("Steel Dynamics") and the United Steel,

Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial

and Service Workers International Union, AFL-CIO, CLC ("United

Steelworkers") on March 20, 2026, (collectively, "Intervenors"). *See* Part.

Consent Motions to Intervene (Ct. No. 26-00764) CM/ECF 11, 15, 19, 23, 29.

This case arises from an attempt by domestic corrosion-resistant steel producers to capture, through their own scope language, a product they do not make, do not sell, and do not compete against. U.S. Steel, Nucor, Cleveland-Cliffs, and Steel Dynamics are large integrated steel producers. They manufacture corrosion-resistant steel – sheet steel coated with zinc, aluminum, or certain alloys that protect automobiles, appliances, and buildings from rust. The United Steelworkers represents a small portion of the workforce. Union membership across private-sector manufacturing, like the brass-coated steel producers that are absent from this case, tends to be lower, with an overall rate of around 6.9% for private-sector industries in the United States. C.R. 536, P.R. 214 (Kemper & Brasmetal, Prehearing brief) at 5.

Brass-coated steel is a different product serving a different market entirely. It is a specialty steel strip, electroplated with brass, and sold to firearm ammunition manufacturers. The brass coating is decorative, not protective: it makes a cartridge look like brass. It provides no sacrificial protection to the underlying steel, because brass – like gold –

is more noble than steel and does not corrode preferentially in steel's place. The cartridge is fired once and discarded. Yet Intervenors now seek to insert themselves into litigation that will determine whether brass-coated steel constitutes a separate domestic like product – a question on which they have no technical knowledge, no commercial stake, and no cognizable legal interest.

Intervenors have no constitutional standing. They neither assert an injury in fact traceable to the outcome of this litigation nor claim piggyback standing by aligning themselves with the relief the United States seeks. That threshold failure is independently dispositive.

Intervenors do not qualify as interested parties under 28 U.S.C. § 2631(j)(1)(B). The statute conditions intervention as of right on a party's status as an interested party in the underlying proceeding – a status that turns on whether a party produces or sells the like product at issue. None of the Intervenors produces or sells brass-coated steel. None of them competes for the same customers, loses sales to imported brass-coated products, or stands to gain or lose a dollar depending on how this Court resolves the domestic like product question. Their asserted interested-party status under 19 U.S.C. § 1677(9) from the underlying

3

investigations does not carry over as a self-executing right to intervene under § 2631. Those provisions were enacted under separate acts and operate independently of one another.

## ARGUMENT

I.  Intervenors Lack Constitutional Standing.

Intervenors failed to establish Article III standing. "{W}here a party tries to intervene as another defendant, that defendant-intervenor must demonstrate Article III standing." *Cal. Steel Indus. v. United States*, 48 F.4th 1336, 1343 (Fed. Cir. 2022) (citation and internal quotation marks omitted). Standing is a threshold inquiry that courts resolve before addressing procedural requirements of the intervention. *Auxin Solar, Inc. v. United States*, 698 F. Supp. 3d 1353, 1372 (Ct. Int'l Trade 2024). Intervenors of right have the burden to demonstrate either independent constitutional standing or "piggyback standing," which applies when seeking the same relief sought by an existing party to the case. *Id.*

Intervenors neither attempted to establish constitutional standing nor claimed piggyback standing. Intervenors asserted only their right to intervention arising out of 28 U.S.C. § 2631(j)(1)(B) and Rule 24(a) of

the Rules of the Court. These assertions do not respond to the threshold inquiry into standing. Intervenors made these assertions while dismissing any duty to state their claim of independent standing or intention to join the United States' prayer for relief.  These omissions came after Plaintiffs raised standing issues in the underlying investigations and in their Complaint before this Court. Intervenors dismissed addressing standing issues in the underlying investigations as well, characterizing petitioners as not required to produce every product within the scope – another issue subject to ongoing litigation.

Intervenors did not meet their burden of establishing standing in their motions. This Court should therefore deny their motions.

II.   Intervenors Are Not Interested Parties and Therefore Have No Right to Intervene Under Rule 24(a) and 28 U.S.C. § 2631(j)(1)(B).

Intervenors cite Rule 24(a) as the basis for their intervention as a matter of right, but do not specify whether their claim rests on Rule 24(a)(1) (an unconditional right under a federal statute) or Rule 24(a)(2) (requiring a claim of interest in the property or transaction, impairment of the ability to protect that interest, and inadequate representation of that interest by existing parties). Intervenors have made no claims of a legally protectable interest in issues concerning brass-coated products

specifically, nor could any such claim be legally cognizable. *See Cal. Steel Indus. v. United States*, 48 F.4th 1336, 1344 (Fed. Cir. 2022). Intervenors have not attempted to demonstrate how their interests would be impaired or how the government would be unable to adequately represent any such interest. For these reasons, Plaintiffs do not address intervention under Rule 24(a)(2), as Intervenors did not raise that ground in their motions.

Intervenors cite to 28 U.S.C. § 2631(j)(1)(B) as granting them the right to intervene, invoking Rule 24(a)(1). The statute states in the relevant part:

> (1) Any person who would be adversely affected or aggrieved by a decision in a civil action pending in the Court of International Trade may, by leave of court, intervene in such action, except that—
>
> (B) in a civil action under section 516A of the Tariff Act of 1930, only an interested party who was a party to the proceeding in connection with which the matter arose may intervene, and such person may intervene as a matter of right;

28 U.S.C. § 2631(j)(1)(B); *see* also *HiSteel Co. v. United States*, 592 F. Supp. 3d 1339, 1343 (Ct. Int'l Trade 2022) (§ 2631(j)(1) establishes permissive intervention for parties "adversely affected or aggrieved" by

6

a court action; § 2631(j)(1)(B) carves out an exception providing intervention as of right).

Intervenors are not interested parties under 28 U.S.C. § 2631. The Supreme Court has recognized a "natural presumption that identical words used in different parts of the same act are intended to have the same meaning," *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 87 (1934) (citation and quotations omitted), but that presumption does not extend the definition of "interested party" found in 19 U.S.C. § 1677 to § 2631, because the two provisions were enacted by separate acts. Section 2631 was enacted as part of the Customs Courts Act of 1980, Pub. L. No. 96-417, codified in Title 28, while § 1677 is a definitional provision of the antidumping and countervailing duty subtitle of the Tariff Act of 1930, as substantially amended by the Trade Agreements Act of 1979, Pub. L. No. 96-39, and codified in Title 19. The Customs Courts Act of 1980 contains no definition of "interested party," and the *Helvering* presumption does not bridge two provisions drawn from different acts. Intervenors therefore cannot treat a determination of "interested party" under 19 U.S.C. § 1677(9) in the underlying investigations as a self-executing right to intervene under § 2631.

7

That conclusion finds further support in the nature of the intervention inquiry itself. The question of whether Intervenors possess the right to intervene under § 2631 is one for this Court to resolve independently. *See Zenith Radio Corp. v. United States*, 5 Ct. Int'l Trade 155, 156 (U.S. 1983) ("The decision of the administrative agency to accept {their} participation . . . even if done in terms of recognizing them as 'interested parties,' cannot control the Court's understanding of a matter primarily related to the invocation of its powers of judicial review."). Rule 24(a)(1) and intervention under § 2631 was not presented to, or decided by, the agencies in the underlying investigations. No agency determination concerning scope, like product, or domestic industry definition binds on whether § 2631's intervention right is so unconditional as to extend to litigants who share no cognizable interest in the outcome of this litigation. As addressed in the next section, Intervenors have not demonstrated any such interest. They rest their claim entirely on broad scope language in the underlying orders, treating that language as a self-executing grant of intervention rights under § 2631. That reading finds no support in the statute; nor do the scope language or the "like product" definitions

justify intervention when the totality of factual circumstances is considered.

   A. Proposed Intervenors Do Not Have a Legally Cognizable Stake in the Outcome of This Litigation.

Proposed intervenors do not produce or sell brass-coated steel, nor do they understand the technical aspects of the product.  Intervenors are large integrated steel producers that manufacture and sell corrosion-resistant steel, among other steel products, but not brass-coated steel, along with a union that represents workers at certain companies.

In the Commission's injury investigation, the room fell into silence when Chair Karpel asked the petitioners about brass-coated products. *See* P.R. 256 (Hearing Tr.) at 121–123, 267 ("CHAIR KARPEL: Okay. I'm not super confident how much information we're going to get from those not represented in this room on this question."). *See* excerpts in Exhibit 1 for reference. As a result, for the post-hearing briefing, petitioners obtained a declaration from an actual producer of brass-coated products. In that declaration, the President and CEO of Thomas Steel Strip Corporation ("Thomas") and Apollo Metals Ltd. ("Apollo") admitted to having "experienced some issues securing sufficient qualified workers for its CORE lines." *See* P.R. 261 C.R. 572

9

(Petitioners' Post-hearing brief) Exhibit 5 at 2. None of the proposed intervenors would add value to the resolution of this litigation, nor do they have an interest in the outcome sufficient to deem them "interested parties." Their interest appears tied to a relationship with Thomas and Apollo. But Thomas and Apollo are not attempting to intervene in this case.

B.  Scope Language Does Not Cover Brass-Coated Products.

Petitioners in the underlying investigations, who now seek to intervene, were responsible for the following scope language, in relevant part, which the Department of Commerce adopted:

> The products covered by this investigation are certain flat-rolled steel products, either clad, plated, or coated with corrosion-resistant metals such as zinc, aluminum, or zinc-, aluminum-, nickel- or iron-based alloys, whether or not corrugated or painted, varnished, laminated, or coated with plastics or other non-metallic substances in addition to the metallic coating.

Brass is not a corrosion-resistant metal "such as zinc, aluminum, or zinc-, aluminum-, nickel-, or iron-based alloys." The issue with the scope language is apparent: evaluating corrosion resistance in a vacuum would result in any metal being deemed corrosion resistant, or none being deemed corrosion resistant, because no material is completely corrosion-proof in every environment. But that is not what the scope

language purports to cover. Corrosion resistance is a quality on a spectrum and is best understood in relation to the underlying metal – steel – which is entirely within the context of these investigations. In the metallurgy and coating industries, corrosion resistance means the ability to provide sacrificial protection to the underlying metal. *See, e.g.*, P.R. 256 (Hearing Tr.) at 122, 204, 208 (including a statement from Nucor Steel). Metals such as zinc and aluminum, or the alloys listed, provide sacrificial protection because they are less noble than steel; that is, they are more corrosive and more reactive than steel. Brass, much like gold, is the opposite: it is corrosion resistant in its own right but does not provide sacrificial protection to the underlying steel.

C. Brass-Coated Steel and Corrosion-Resistant Steel Are Not Alike.

The record of the underlying investigation shows the distinctions between brass-coated products and the corrosion-resistant products, which are described by the scope language and produced by the petitioners and proposed intervenors. Kemper & Brasmetal submitted the following comparative table summarizing the key differences between the two products, supported by significant scientific evidence in the record:

|  | CORE (corrosion-resistant) | BRCS (brass-coated steel) |
| --- | --- | --- |
| Physical characteristics/use | Steel sheet coated with corrosion-resistant metals<br><br>Coating metals and alloys are less noble than steel<br><br>Provides sacrificial protection to the steel<br><br>Used for corrosion-resistant properties, primarily in the automotive industry where long-term endurance is required | Steel sheet coated with non-corrosion-resistant brass, exhibiting different color<br><br>Coating alloy more noble than steel<br><br>Does not provide sacrificial protection to the steel<br><br>Used for its decorative or aesthetic appeal in ammunition cartridge manufacturing; discarded after single use |
| Manufacturing facilities | None of the petitioning CORE producers produce BRCS<br><br>Primarily involves hot-dip galvanizing with higher investment in infrastructure, training for high-heat handling, and results in thicker coatings<br><br>Non-automotive CORE may be electroplated | Some domestic BRCS producers also produce smaller quantities of specialty CORE products<br><br>Involves electroplating, more adaptable to smaller spaces, relies on chemical and electrical expertise, and is less costly in terms of materials and energy, but typically produces thinner coatings |

| Channels of distribution | Shipped to the automotive and construction industries, as well as to stampers/ fabricators, other distributors, and steel service centers | Slit to size in country of origin and shipped for final delivery to firearm ammunition manufacturers |
| --- | --- | --- |
| Price | Significantly different from BRCS | Significantly different from CORE |
| Interchangeability | Not interchangeable with BRCS<br><br>Used in manufacture of automobile bodies, appliances, and commercial and residential buildings, as well as in other construction applications | Not interchangeable with CORE<br><br>Used in firearm ammunition manufacturing and none of the CORE uses<br><br>Unsuitable in automobile manufacturing for lack of corrosion-resistance and lack of similar paint adhesion |
| Producer and customer perceptions | Corrosion-resistance to extend the service life of products made from the steel, specifically for "extending the service life of automobiles" | Aesthetic purpose, making brass-coated ammunition cartridges look like brass |

*See* C.R. 587, P.R. 273 (Kemper & Brasmetal, Posthearing Brief)

Exhibit 1.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Partial Consent Motions to Intervene filed by the Intervenors. Intervenors lack constitutional standing, do not qualify as interested parties under 28 U.S.C. § 2631(j)(1)(B), and have no cognizable stake in litigation that concerns a product they neither make nor sell. Their motions should be denied.

John Anwesen
LIGHTHILL PC
300 New Jersey Ave., NW
Ste 300
Washington DC, 20001
(771) 212 – 7982
j.anwesen@lighthill.law

Date: April 14, 2026

14

# Exhibit 1

# UNITED STATES INTERNATIONAL TRADE COMMISSION

```
In the Matter of:          )
                           )
CORROSION-RESISTANT STEEL  ) Investigation Nos.:
PRODUCTS FROM AUSTRALIA,   ) 701-TA-733-736 and
BRAZIL, CANADA, MEXICO,    ) 731-TA-1702-1711 (Final)
NETHERLANDS, SOUTH AFRICA, )
TAIWAN, TURKEY, UNITED ARAB )
EMIRATES, AND VIETNAM      )
```

**REVISED AND CORRECTED TRANSCRIPT**

```
Pages:    1 through 355

Place:    Washington, D.C.

Date:     August 12, 2025
```

## HERITAGE REPORTING CORPORATION

*Official Reporters*
1150 Connecticut Avenue, N.W., Suite 305
Washington, D.C.  20036
(202) 628-4888
contracts@hrccourtreporters.com

John Anweson downloaded 801150-2428037 on Thu Feb 19 16:46:00 EST 2026

1

            THE UNITED STATES INTERNATIONAL TRADE COMMISSION

In the Matter of:            )
                             )
CORROSION-RESISTANT STEEL    )  Investigation Nos.:
PRODUCTS FROM AUSTRALIA,     )  701-TA-733-736 and
BRAZIL, CANADA, MEXICO,      )  731-TA-1702-1711 (Final)
NETHERLANDS, SOUTH AFRICA,   )
TAIWAN, TURKEY, UNITED ARAB  )
EMIRATES, AND VIETNAM        )

                                     Room 101
                                     U.S. International
                                       Trade Commission
                                     500 E Street, S.W.
                                     Washington, D.C.

                                     Tuesday,
                                     August 12, 2025

        The hearing commenced, pursuant to notice, at

9:30 a.m., before Commissioners of the United States

International Trade Commission, the Honorable AMY A.

KARPEL, Chair, presiding.

        APPEARANCES:

        On Behalf of the International Trade Commission:

        Commissioners:

        AMY A. KARPEL, Chair
        DAVID S. JOHANSON, Commissioner
        JASON E. KEARNS, Commissioner

        Staff:

        SHARON BELLAMY, Supervisory Hearings and
           Information Officer
        TYRELL BURCH, Management Analyst
        PRISCILLA THOMPSON, Program Support Specialist

                     Heritage Reporting Corporation
                         (202) 628-4888

John Anweson downloaded 801150-2428037 on Thu Feb 19 16:46:00 EST 2026

2

APPEARANCES:   (Cont'd)

ALEJANDRO OROZCO, Investigator
MARK BRININSTOOL, Trade Analyst
TANA VON KESSLER, Economist
EMILY KIM, Accountant-Auditor
DAVID GOLDFINE, Attorney
SPENCER J. TOUBIA, Attorney
DOUGLAS CORKRAN, Supervisory Investigator

Heritage Reporting Corporation
(202) 628-4888

John Anweson downloaded 801150-2428037 on Thu Feb 19 16:46:00 EST 2026

121

issues that she raised in her footnote.

MR. PRICE:  We will.  And if she wants to come back and vote in the final, she's welcome to.

COMMISSIONER KEARNS:  Okay.  All right.  Thank you.  My time's expired.

CHAIR KARPEL:  Thank you.  I think I just have a couple questions.  One is if you could speak to brass-coated steel a bit.  There's an argument made by Kemper that brass-coated steel doesn't actually create a corrosion-resistant steel such that they make some arguments about the scope, which isn't our job here at the Commission to sort out.

But I think it's relevant to domestic like product in that if it's true that brass-coated steel doesn't offer corrosion resistance, that does change its, you know, ability to be substituted or fungible with other kinds of corrosion-resistant steel.  It does affect maybe some of the other elements of the like product analysis.

So did you have a reaction to their brief and their assertions that brass-coated steel lacks corrosion resistance properties?

MR. BELINE:  Chair Karpel, this is Tom Beline for the record.  There are producers of brass-coated steel in the domestic industry.  I think they've submitted information to you.  I don't think anybody on this panel wants to

John Anweson downloaded 601150-2428037 on Thu Feb 19 16:46:00 EST 2026

122

necessarily speak to them, and so I think that's on the record already.

I think they have indicated in a number of ways that brass coating does, in fact, impart corrosion resistance, and so I don't think that there's a basis for a separate like product here on that basis, as well as on all the other factors that the Commission considers.

But I suspect that given that they're not here that they will have to file something in a post-hearing, so I don't think we have the panel here to do anything more than that.

CHAIR KARPEL: But none of you can speak generally to whether brass-coated steel has corrosion-resistant properties?

MR. KOPF: Chair Karpel, Rob Kopf with U.S. Steel. Anytime you take a carbon steel product and apply a coating to the outside, it's going to add some sort of corrosion resistance to it.

MR. KRAUSE: Randy Krause from Nucor Steel. I'm one of the few metallurgists in the room. So I will say that brass does have zinc and copper in it, right, so one of the things when you're talking about CORE is having zinc on it. So, as far as actual corrosion resistance, I'm not overly familiar with that particular process, but just the fact that it does have zinc, which is a sacrificial anode, will create

John Arweson downloaded 801150-2428037 on Thu Feb 19 16:46:00 EST 2026

123

some kind of corrosion resistance.

CHAIR KARPEL:  Okay.  I'm not super confident how much information we're going to get from those not represented in this room on this question, so I'm sort of wondering how to kind of come to terms with the arguments of Respondents.  So anything, you know, you can think post-hearing that would be helpful for us to understand from a chemistry standpoint, it's been a long time since I took chemistry freshman year of college about noble metals and other such, so -- but anyway, post-hearing, if there's anything you can say that would be helpful for us sort of getting to the bottom of this issue, and I certainly will ask Respondents about it this afternoon.

MR. KRAUSE:  We'll do so.

CHAIR KARPEL:  Thanks.

And then I just wanted to follow up on domestic industry.  I read your brief on these points, and I guess my request is either now or post-hearing, if you could elaborate a little bit more on a point that is important to me in making these determinations about whether it's appropriate to exclude a domestic producer or not, and that is the issue of whether a relationship with a domestic producer to a foreign exporter is having the effect of shielding that domestic producer from the effects of subject import competition or, if the domestic producer is importing, whether they're

Heritage Reporting Corporation
(202) 628-4888

John Anwesen downloaded 801150-2428037 on Thu Feb 19 16:46:00 EST 2026

205

scope to cover brass-plated products.

We asked the Department of Commerce to confirm that brass-coated products are outside the scope.  Preliminarily, Commerce deferred to the Petitioners' post-hoc statements of intent, rather than to the scope language itself.  And although the Commission's preliminary view suggested there was some evidence of brass corrosion resistance and use in the automotive industry, all of that evidence concerned solid brass screws, solid brass fittings, and brass-plated screws -- not brass-plated flat products.

There is no record evidence that brass coating is corrosion resistant, except for unsupported assertions by Petitioners in their briefs, who do not even produce the product. Some have reported that they're not even familiar with the product, and I think earlier today we got a confirmation of that.

The scope expansion raises serious legal questions about standing.  The Petitioners do not have standing to speak on behalf of the brass-coated flat-rolled steel industry.

Second, brass-coated steel is a separate domestic like product.  Even were the Department of Commerce to determine that brass-coated steel is in-scope, every like product factor supports a clear dividing line between brass-coated steel on the one hand, and automotive CORE and

Heritage Reporting Corporation
(202) 628-4888

John Anweson downloaded 801150-2428037 on Thu Feb 19 16:46:00 EST 2026

267

who do understand this and we will of course be working with them on this.  But to the extent there's any, and maybe you've already put this in, any more technical explanation of the corrosion-resistant properties of brass coatings on steel, you know, feel free to put that in.  That could be helpful for our staff who is able to understand this at a more granular technical level.  So to the extent you have sort of metallurgical analyses or reports, certainly there are folks on the Commission staff who can understand it at a detailed level.

MR. GURLEY:  Commissioner, if I could, this is John Gurley for Duferco, and to be clear, I don't really care about brass, but what I think is emblematic of what's happened today is that we have Petitioners who don't, most of them didn't know what this product was, they've never made it, and yet we have them writing in their briefs and basically all waving their arms today going well, it very well could be covered.

It shows you a Petitioner that's pretty greedy, I have to say.  I guess it's reflexing in their business, but in this kind of case the fact that they're having to defend themselves I think is pretty shocking that the Petitioners just wouldn't say they're not covered.

MR. ANWESEN:  Thank you.  And just quickly, Chair Karpel, we have in our post-conference brief at the

Heritage Reporting Corporation
(202) 628-4888

John Anweson downloaded 801150-2428037 on Thu Feb 19 16:46:00 EST 2026