IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>
KEMPER AIP MENTALS, LLC & WAELZHOLZ BRASMETAL LAMINAÇÃO LTDA.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant.
</td><td>
Before: Hon. Timothy M. Reif,<br>Judge<br><br>Court No. 26-00764
</td></tr>
</table>

## RESPONSE TO OPPOSITION TO MOTION TO INTERVENE

Proposed Defendant-Intervenors, Nucor Corporation ("Nucor"), Cleveland-Cliffs Inc. ("Cleveland-Cliffs"), Steel Dynamics, Inc. ("SDI"), United States Steel Corporation ("U.S. Steel"), and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW") (collectively, "Proposed Defendant-Intervenors"), respectfully submit this reply in further support of their motions to intervene as of right pursuant to 28 U.S.C. § 2631(j)(1)(B) and Rule 24(a)(1) of the Rules of this Court. Plaintiffs, Kemper AIP Metals, LLC ("Kemper") and Waelzholz Brasmetal Laminacao Ltda. (collectively, "Plaintiffs"), oppose intervention based on two fundamental errors. First, Plaintiffs misstate the governing law of standing applicable to defendant-intervenors in actions before this Court. Second, Plaintiffs attempt to impose limitations on intervention that appear nowhere in the text of § 2631(j)(1)(B) and that have been consistently rejected by controlling precedent. Neither argument withstands scrutiny, and neither provides any basis to deny Proposed Defendant-Intervenors' statutory right to intervene.

Plaintiffs' opposition rests on a premise that is as legally incorrect as it is extraordinary: that domestic producers, including those on whose behalf the underlying petitions were filed, lack

Ct. No. 26-00764

any cognizable interest in defending on judicial review the U.S. International Trade Commission's (the "Commission") final affirmative injury determination regarding such petitions. That proposition has no basis in the statute, in Article III, or in common sense. Domestic producers do not merely have a generalized interest in the outcome of this litigation, they have a concrete and substantial interest in ensuring that the Commission's determination—particularly its domestic like product analysis—is not judicially narrowed in a manner that undermines the very relief Congress designed the trade laws to provide.

An adverse ruling here would not be limited to this case. It would severely inhibit petitioners' ability to defend antidumping or countervailing duty orders on appeal, even where the question was fully litigated and resolved during the administrative proceeding. Plaintiffs' theory would turn intervention into a vehicle for relitigating the merits of the Commission's decision under the guise of standing and would threaten to exclude the very parties Congress expressly authorized to participate in § 1516a actions.

## I.    BACKGROUND

These consolidated actions arise from the Commission's final affirmative injury determination in *Corrosion-Resistant Steel Products from Australia, Brazil, Canada, Mexico, the Netherlands, South Africa, Taiwan, Turkey, the United Arab Emirates, and Vietnam*, Inv. Nos. 701-TA-733–736 and 731-TA-1702–1711, USITC Pub. 5678 (Nov. 2025) (Final), P.R. 309 ("USITC Pub. 5678"). The Commission determined that a domestic industry producing corrosion-resistant steel products ("CORE") was materially injured by reason of subject imports sold at less than fair value and, in certain cases, subsidized by foreign governments.

The investigations were initiated on September 5, 2024, following petitions filed by domestic CORE producers and a labor union. Throughout the proceedings, the Commission

Ct. No. 26-00764

examined the condition of the U.S. CORE industry, the volume and pricing of subject imports, and the effects of those imports on domestic producers. As part of that analysis, the Commission made a domestic like product determination, as required under the statute, to define the domestic product for which injury would be assessed.

A central issue was whether CORE constitutes a single domestic like product encompassing a range of coating types and chemistries, including whether brass-coated CORE should be treated as a separate product. Domestic interested parties, including proposed Defendant-Intervenors, argued that CORE exists along a broad continuum without clear dividing lines, consistent with the Commission's findings in prior original investigations and five-year reviews. They maintained that there is no clear dividing line between brass-coated CORE and other in-scope CORE; that brass-coated CORE shares the same basic chemical composition and physical properties as other CORE products; and that it is produced by the same U.S. producers, using the same facilities, equipment, processes, and workforce. They further explained that brass-coated CORE is sold through the same channels of distribution and is perceived by producers and customers as part of a single CORE product category. Letter from Schagrin Associates, Wiley Rein LLP, and Cassidy Levy Kent (USA) LLP to Sec'y Commission, re: *Corrosion-Resistant Steel Products from Australia, Brazil, Canada, Mexico, the Netherlands, South Africa, Taiwan, Turkey, the United Arab Emirates, and the Socialist Republic of Vietnam: Petitioners' Pre-Hearing Brief* (Aug. 5, 2025) at 13-15 ("Petitioners' Prehearing Br."), C.R. 539, P.R. 223; Letter from King & Spalding LLP to Sec'y Commission, re: *Corrosion-Resistant Steel Products From Australia, Brazil, Canada, Mexico, The Netherlands, South Africa, Taiwan, Turkey, United Arab Emirates, And Vietnam: Prehearing Brief of Cleveland-Cliffs Inc.* (Aug. 5, 2025) at 12-14 ("Cleveland-Cliffs Prehearing Br."), C.R. 534, P.R. 213; Letter from Schagrin Associates, Wiley Rein LLP, and

Ct. No. 26-00764

Cassidy Levy Kent (USA) LLP to Sec'y Commission, re: *Corrosion-Resistant Steel Products from Australia, Brazil, Canada, Mexico, the Netherlands, South Africa, Taiwan, Turkey, the United Arab Emirates, and the Socialist Republic of Vietnam: Petitioners' Posthearing Brief* (Aug. 29, 2025) at Exhibit 1, p. Exhibit 1-26 ("Petitioners' Posthearing Br."), C.R. 572, P.R. 261.

Respondent Kemper urged the Commission to define brass-coated CORE as a separate domestic like product based on asserted differences in coating characteristics and end uses. The Commission rejected that request. While acknowledging that the record suggested some differences between brass-coated CORE and certain other CORE products, the Commission found no evidence that brass-coated CORE was more distinctive than other coating types already within the CORE continuum or that any differences constituted the kind of clear dividing lines typically required to define a separate domestic like product. Consistent with its prior rejection in the 2016 CORE investigations of a similar request to carve out copper-plated CORE, the Commission concluded that all CORE should be treated as a single domestic like product. The Commission likewise declined to credit assertions that brass-coated CORE is produced through a materially different electroplating process, finding the record insufficient to establish meaningful distinctions from processes used for other CORE products. It also reiterated that limited interchangeability for particular end uses among products within a continuum is neither unusual nor inconsistent with a single domestic like product finding. USITC Pub. 5678 at 14. Ultimately the Commission included brass-coated products as part of a single domestic like product. *Id* at. 10.

The Commission issued its affirmative injury determination on that record, giving rise to Plaintiffs' challenge under 19 U.S.C. § 1516a. *Id.* at 2.

Ct. No. 26-00764

II.    <u>**ARGUMENT**</u>

 A. **Section 2631(J)(1)(B) Confers an Unconditional Right to Intervene, and Plaintiffs Apply the Wrong Legal Framework**

Plaintiffs' opposition rests a basic mischaracterization of the legal standard that controls here. Rather than applying the statute that controls intervention in this case, Plaintiffs attempt to impose requirements drawn from Rule 24(a)(2) and a freestanding conception of "interest" that Congress did not adopt. That approach is inconsistent with the statutory scheme governing actions under 19 U.S.C. § 1516a.

This is a Rule 24(a)(1) case. Congress has already supplied the applicable intervention standard through 28 U.S.C. § 2631(j)(1)(B), which provides that in a § 1516a action, "only an interested party who was a party to the proceeding in connection with which the matter arose may intervene, and such person may intervene as a matter of right." Once that provision applies, intervention is governed by Rule 24(a)(1), which applies "when a statute of the United States confers an unconditional right to intervene."

The Court of International Trade has confirmed that this right is mandatory. "According to the plain meaning of 28 U.S.C. § 2631(j)(1)(B), the right to intervene established thereunder is the only means by which {a movant} may intervene in this case, and that right is an unconditional right." *Dofasco Inc. v. United States*, 31 C.I.T. 1592, 1594, 519 F. Supp. 2d 1284, 1286–87 (2007).

Plaintiffs nevertheless improperly attempt to shift the analysis to Rule 24(a)(2), arguing that Intervenors must demonstrate a "legally protectable interest," impairment, and inadequate representation. That is the wrong standard. Congress displaced Rule 24(a)(2) for § 1516a cases by enacting a specific intervention mechanism in § 2631(j)(1)(B). Plaintiffs' argument therefore targets a requirement that does not apply. This distinction is not technical. Section 2631(j) contains

Ct. No. 26-00764

both a permissive intervention provision and a specific carveout for § 1516a actions. In those actions, qualifying parties "may intervene as a matter of right."

> **B.      Plaintiffs' "Lack of Interest" Theory Improperly Seeks to Resolve Merits Questions at the Intervention Stage**

Plaintiffs' central contention is that Intervenors are not interested parties under 28 U.S.C. § 2631. Opp'n. Mot. at 7. That argument fails because it ignores how "interested party" is defined in § 1516a actions and improperly substitutes a merits theory for the statutory test. Plaintiffs' argument fails for an even more fundamental reason: it is an overt attempt to litigate the merits of this case at the intervention stage. Whether brass-coated products fall within the domestic like product defined by the Commission is not a threshold jurisdictional issue, it is the principal substantive dispute raised in the complaint. Plaintiffs' position would require the Court to assume the correctness of Plaintiffs' merits theory in order to deny intervention. Section 2631(j)(1)(B) does not permit intervention to hinge on acceptance of the plaintiff's preferred reading of the administrative record.

Section 2631(j)(1)(B) applies specifically to actions under § 1516a. For those actions, the Court has held that "'interested party' is defined for purposes of § 1516a by 19 U.S.C. § 1677(9) . . . ." *Dofasco*, 31 C.I.T. at 1595, 519 F. Supp. 2d at 1287 (comparing 19 U.S.C. § 1516a(a)(2)(A) and 28 U.S.C. § 2631(c), both of which permit commencement of an action by "an interested party who was a party to the proceeding in connection with which the matter arose," with 28 U.S.C. § 2631(j)(1)(B), which limits intervention to "an interested party who was a party to the proceeding in connection with which the matter arose," and applying the presumption that Congress intended identical language used in different provisions of the same statutory scheme to have the same meaning); *see also Sorenson v. Sec'y of Treasury of U.S.*, 475 U.S. 851, 860 (1986) ("The normal rule of statutory construction assumes that identical words used in different parts of the same act

6

Ct. No. 26-00764

are intended to have the same meaning."). But even more fundamentally, by virtue of 28 U.S.C. § 2631(k)(1), the term "interested party" for purposes of § 2631 is given the meaning set out in section 771(9) of the Tariff Act of 1930, 19 U.S.C. § 1677(9). 19 U.S.C. § 2631(k)(1).

That resolves Plaintiffs' attempt to isolate Title 28 from Title 19 and their claim that "Intervenors therefore cannot treat a determination of "interested party" under 19 U.S.C. § 1677(9) in the underlying investigations as a self-executing right to intervene under § 2631." Opp'n. Mot. at 5. The definition is supplied by the trade statute governing the underlying proceeding.

Each of the Proposed Defendant-Intervenors satisfies that definition. Each is an 'interested party' within the meaning of 19 U.S.C. § 1677(9) and was a party to the proceeding in connection with which this action arose. 28 U.S.C. § 2631(j)(1)(B). 28 U.S.C. § 2631(j)(1)(B); 19 U.S.C. §§ 1677(9)(C) and 1516a(d); 19 C.F.R. § 351.102(b).

Plaintiffs do not dispute that Proposed Defendant-Intervenors participated in the underlying proceeding. Instead, they dismiss the unconditional nature of the intervention right under § 2631(j)(1)(B) and require intervenors to prove some freestanding, merits-based "cognizable interest" divorced from the underlying administrative proceeding. First, Plaintiffs apply the wrong legal framework. The statute looks to participation in "the proceeding in connection with which the matter arose," not to Plaintiffs' characterization of the product subject to litigation. 28 U.S.C. § 2631(j)(1)(B). As the Court recognized in *Zenith Radio Corp. v. United States*, "{t}he decision of the administrative agency to accept participation … cannot control the Court's understanding of a matter primarily related to the invocation of its powers of judicial review." 5 CIT 155, 156 (Ct. Int'l Trade 1983). But the relevant point here is that intervention turns on participation in the underlying administrative proceeding itself.

Ct. No. 26-00764

Second, Plaintiffs' argument improperly attempts to resolve a central merits issue at the intervention stage. Plaintiffs' theory depends on the premise that brass-coated steel is outside the relevant domestic like product. But that is one of the core disputes in this case. Section 2631(j)(1)(B) does not require the Court to decide that merits question in order to determine who may participate. Plaintiffs' characterization of this case as involving only brass-coated steel necessarily depends on a merits determination that goes to the heart of the underlying dispute. It cannot erase Proposed Defendant-Intervenors' status as interested parties that participated in the underlying proceedings. Thus, if Plaintiffs' approach were accepted, any party could defeat intervention simply by recharacterizing the product scope in litigation. That would render § 2631(j)(1)(B)'s as-of-right intervention meaningless in precisely the cases where product definition is disputed. The statute does not permit that result.

## C.    Proposed Defendant-Intervenors Are Not Required to Establish Independent Article III Standing Because They Seek the Same Relief as the United States

Finally, Plaintiffs' attempt to constitutionalize their opposition fares no better. Article III poses no obstacle where proposed defendant-intervenors seek the same relief as the United States.

Plaintiffs contend that Proposed Defendant-Intervenors must independently establish Article III standing and that failure to do so is "independently dispositive." Opp'n. to Partial Consent Mot. to Intervene (Apr. 10, 2026) at 2, ECF No. 33 ("Opp'n. Mot."). That contention ignores what Proposed Defendant-Intervenors actually seek in this action: the same relief sought by the United States, namely affirmance of the agency determination under review.

Plaintiffs' standing objection fails for a straightforward reason. Proposed Defendant-Intervenors do not seek "additional relief beyond that which the {party with standing} requests." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). That

8

Ct. No. 26-00764

principle is dispositive here. Where an intervenor seeks no relief beyond that already requested by a party with standing, Article III does not require a separate, independent showing.

The Federal Circuit has expressly applied this "relief sought" framework to defendant-intervenors in trade cases. In *California Steel Industries, Inc. v. United States*, the court confirmed that standing may be satisfied through what it described as "piggyback standing," where the proposed intervenor seeks the same relief as an existing party. 48 F.4th 1336 (Fed. Cir. 2022). The court explained that the Court of International Trade properly treated standing as a threshold inquiry and recognized that a proposed intervenor may establish standing either independently or through piggyback standing, defined as "standing based on seeking the same relief sought by an existing party to the case." *Id.* at 1340. That holding squarely forecloses Plaintiffs' argument here.

Proposed Defendant-Intervenors do not seek to broaden the case, introduce new claims, or obtain any relief different from that sought by the United States. To the contrary, each of the Proposed Defendant-Intervenors has been explicit from the outset that it seeks to participate on the side of the Defendant, the United States, in support of the final affirmative determination by the Commission. Mot. to Intervene (Mar. 19, 2026) at 3, ECF 19; *see also* Partial Consent Mot. to Intervene as Def.-Intervenor *as a Matter of Right*, (Mar. 11, 2026), ECF No. 11; Mot. to Intervene (Mar. 19, 2026), ECF No. 15; Mot. to Intervene (Mar 23, 2026), ECF. No. 29. The only relief Proposed Defendant-Intervenors seek is affirmance of that determination.

Plaintiffs do not identify any additional or different remedy that Proposed Defendant-Intervenors request, because none exists. Instead, Plaintiffs argue that Proposed Defendant-Intervenors "neither attempted to establish constitutional standing nor claimed piggyback standing." Opp'n. Mot at 3. Plaintiffs' assertion that Proposed Defendant-Intervenors did not establish piggyback standing is incorrect, as they explicitly state that they seek the same

Ct. No. 26-00764

relief as the United States. Plaintiffs' argument elevates form over substance and misstates the governing inquiry. Neither *Town of Chester* nor *California Steel* requires a proposed intervenor to invoke the phrase "piggyback standing" as a talisman. The inquiry is functional, not semantic. Indeed, *California Steel* addressed a similar situation and held that the U.S. Court of International Trade had erred when finding no standing without considering the substance of proposed intervenors' request for relief. 48 F.4th at 1343 ("the appropriate action would have been for the Court of International Trade to request clarification from the parties before *sua sponte* raising and deciding the standing inquiry"). Thus, here, as in *California Steel,* the question is not what label an intervenor uses, but what relief it seeks.

On its face, the answer is clear. Proposed Defendant-Intervenors seek only to defend and sustain the challenged agency determination alongside the United States. Under *Town of Chester* and *California Steel*, that is sufficient to satisfy Article III. Plaintiffs' contrary theory would contravene the holding and rationale of *California Steel* and improperly convert a settled, practical doctrine into a rigid pleading requirement and would exclude intervenors based on word choice rather than substance. That is not the law, and it is not how standing is analyzed in this Court.

Because Proposed Defendant-Intervenors seek the same relief as the United States and no more, Article III is satisfied, and Plaintiffs' standing objection provides no basis to deny intervention.

Ct. No. 26-00764

## III.    CONCLUSION

Plaintiffs' opposition rests on legal standards that do not govern intervention in actions brought under 19 U.S.C. § 1516a. Congress has spoken clearly. Section 2631(j)(1)(B) confers an unconditional right to intervene on any interested party that participated in the underlying proceeding. Each of the Proposed Defendant-Intervenors satisfies that requirement. They actively participated in the Commission's investigation, and seek only to defend the agency determination alongside the United States. Nothing more is required.

Plaintiffs' efforts to transform intervention into a merits-based inquiry or to impose extra-statutory requirements find no support in the text of the statute or in controlling precedent. Accepting Plaintiffs' arguments would upend Congress's carefully balanced framework by transforming intervention into a premature merits adjudication and by disabling petitioners from defending the scope of the very orders they lawfully obtained.

For these reasons, the Court should grant Proposed Defendant-Intervenors' motion to intervene as of right.

Respectfully submitted,

*/s/ Alan H. Price*
Alan H. Price, Esq.
Christoper B. Weld, Esq.
Stephanie M. Bell, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Nucor Corporation*

11

Ct. No. 26-00764

/s/ Stephen P. Vaughn
Stephen P. Vaughn, Esq.
Neal J. Reynolds, Esq.

KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 626-9230

*Counsel to Cleveland-Cliffs Inc.*

/s/ Jeffrey D. Gerrish
Roger B. Schagrin
Jeffrey D. Gerrish

SCHAGRIN ASSOCIATES
900 Seventh Street, N.W.,
Suite 500
Washington, DC 20001
(202) 626-9230

*Counsel to Steel Dynamics, Inc. and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

/s/James E. Ransdell
James E. Ransdell
Thomas M. Beline
Margaret E. Monday

CASSIDY LEVY KENT (USA) LLP
2112 Pennsylvania Ave. NW
Ste. 300
Washington, DC 20036
(202) 567-2300

*Counsel to United States Steel Corporation*

Dated: May 1, 2026

12